**WOOTTON HOTEL CORPORATION v. NORTHERN ASSUR. CO., Limited.**

No. 2931.

District Court, E. D. Pennsylvania.
Sept. 28, 1944.

Joseph A. Ball, of Philadelphia, Pa., for plaintiff.

Elias G. Naame, of Atlantic City, N. J., and Joseph S. Conwell, Jr., of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This action was brought by the Wootton Hotel Corporation, a New Jersey corporation, against the Northern Assurance Company, Ltd., an English concern, to recover on a windstorm policy. The question for determination is whether the damage to the subject of insurance, a pier, comes within the protection of the policy. There is a preliminary question in the field of conflict of laws.

A jury trial was waived, and the case was submitted on the pleadings and additional testimony. Accordingly, I make the following

Findings of Fact

1. The plaintiff is the Wootton Hotel Corporation, a corporation duly organized under the laws of the State of New Jersey.

2. The defendant is the Northern Assurance Company, Ltd., of London, England, having its principal offices in the United States at 80 Johns Street, New York, New York, and authorized to write insurance on property located in the State of New Jersey against loss or damage by windstorm, cyclone or tornado.

3. On August 2, 1941, plaintiff held title to and possession of a pier situated at 15th and Ocean Avenue, Brigantine Beach, Atlantic County, New Jersey.

4. On or about August 2, 1941, defendant issued its policy No. 120019 to the Wootton Hotel Corporation, covering said .pier, for damage or loss by windstorm, for the term of one year, in the amount of $10,000.

5. Application for the insurance was made by plaintiff through its broker, Mr. Mitosky, at defendant's branch office located at 424 Walnut Street, in the City of Philadelphia, Commonwealth of Pennsylvania. Said policy was countersigned by one E. MacConnell, a resident of New Jersey, and was delivered to Mr. Mitosky at the Philadelphia office of defendant.

6. On or about March 2 and March 3, 1942, Brigantine Beach, New Jersey was subjected to a moderately severe storm during which the wind reached a maximum velocity of 55 miles per hour.

7. The average normal hourly wind velocity in the area of Brigantine Beach for that time of year (March 2d and 3d) is 16.8 miles per hour.

8. During the storm of March 2d and 3d, a portion of said pier extending out in-

to, and completely surrounded by, the ocean was destroyed.

9. The loss and damage to the pier was caused by high water driven by wind.

10. There is no evidence that the damage, or any part of it, was caused solely and directly by the wind.

## Discussion

The preliminary question for determination is whether the law of Pennsylvania or the law of New Jersey controls. Defendant did not press its contention for the application of New Jersey law since it considered the law of both states to be the same. Nevertheless, I am of the opinion that the New Jersey law governs here since under the Pennsylvania decisions the contract is to be governed by the law of the state where the countersigning agent resides. In diversity of citizenship cases, the Federal Courts, when deciding questions of conflict of laws, must follow the rules prevailing in the state in which they sit: Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. The rule in Pennsylvania is clearly stated in Hardiman v. Fire Association of Philadelphia, 1905, 212 Pa. 383, at page 390, 61 A. 990, at page 991:

"The authorities are well settled that, where a policy is required to be countersigned by an agent in another state, the contract is to be governed by the law of the state where the agent resides. The substance of the cases is thus stated in 22 Am. & Eng. Ency. of Law (2d Ed.) 1350: 'If the policy provides that it shall not be complete until countersigned by an agent at a specified place, it is a contract of the place where it is to be countersigned.'"

A similar rule prevails in other jurisdictions. See 1 Couch, Ency. of Insurance Law (1929) Sec. 198.

The policy in the instant case specifically provides that it "shall not be valid until countersigned by the duly authorized agent of the Company at" Collingswood, New Jersey. In fact, the policy was countersigned by one E. MacConnell who, the uncontradicted evidence reveals, was the defendant's authorized agent residing in New Jersey.

Coming now to the merits of the case, the plaintiff asserts its right to recover on the ground that the wind was the proximate cause of the damage to the pier, or, more specifically, that the damage was caused by high water driven by wind. The policy, however, specifically provides (lines 42–44 inclusive) that the Company shall not be liable for loss or damage caused "directly or indirectly by tidal wave, *high water* or overflow *whether driven by wind or not.*" I am of the opinion that plaintiff has placed its case directly within the exceptive provision, and may not recover on that ground under the decision in Newark Trust Co. v. Agricultural Insurance Co., 3 Cir., 1916, 237 F. 788, which is binding on this Court.

In the Newark Trust Co. case a similar provision was the subject of controversy. The plaintiff in that case asserted that under proper construction of the contract of insurance, the defendant was liable for damage done by water when raised or driven by wind. The United States Circuit Court of Appeals held otherwise, stating, 237 F. at page 792:

"Reserving any question of proximate cause, it is manifest from the terms of the contract, as well as from the enumerated elements, that the perils insured against are the perils of the air, and among those expressly excepted are perils of water; and that after disclaiming liability for damage caused by such specific water forces as tidal wave, high water, overflow and cloudburst, the insurance company broadly refuses to assume liability for any loss or damage caused generally by water, even when 'driven by wind.'

"As the jury found that the house was destroyed by water and as the contract denies liability for damage 'caused by water, whether driven by wind or not', the plaintiffs' case, based upon the theory of wind-driven water, comes within the second exempting clause and necessarily falls."

See also National Fire Insurance Co. v. Crutchfield, 160 Ky. 802, 170 S.W. 187, L.R.A. 1915B, 1094. The cases on which plaintiff relies are distinguishable, for in no case was there a provision in the policy specifically and clearly excepting the hazard.

Plaintiff further asserts that it has established that the wind was not only the proximate and efficient cause of the loss, but was also the sole and direct cause. With this view of the evidence I cannot agree. Plaintiff's only witness on this matter was a Mr. Barker, an expert who had

examined the pier immediately after the storm. He testified that the water was the cause of the loss (N.T. 42):

"Q. Are you able to express any opinion as to whether the front end of the pier, which had disappeared, whether the damage was caused by the wind or the water? A. Why, it was caused by the water, I would say."

On re-direct examination, Mr. Barker testified that the storm caused the high water, and this is supported by the testimony of Mr. Deitch, the officer in charge of the U. S. Weather Bureau station at Atlantic City. Further testimony by Mr. Deitch and Mr. Swinton as to pressure created by the wind establishes that the wind alone did not cause the loss, but rather that it was caused by water driven by the wind.

On the view taken, it becomes unnecessary to decide other issues raised by the parties.

Accordingly, I state the following

### Conclusions of Law

1. The damage to the pier was caused by high water driven by wind, which hazard is expressly excepted by the terms of the policy.

2. Plaintiff is not entitled to recover against defendant in this action.

An order may be submitted in accordance with this opinion.