35 N.J. Super. 1 (1955)
113 A.2d 53
FRED A. BRINDLEY (ALSO KNOWN AS FREDERIC A. BRINDLEY) AND ANNE BRINDLEY, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
FIREMEN'S INSURANCE CO. OF NEWARK, N.J., HARTFORD FIRE INSURANCE CO. OF HARTFORD, CONNECTICUT, WORLD FIRE & MARINE INSURANCE CO. OF HARTFORD, CONNECTICUT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1955.
Decided March 25, 1955.
*3 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Samuel Backer argued the cause for defendants-appellants (Messrs. Backer & Arkus, attorneys).
Mr. Louis B. Levine argued the cause for plaintiffs-respondents.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a judgment entered in favor of plaintiffs for $443 in an action in the Mercer County District Court tried by the court without a jury upon the "extended coverage endorsement" provisions of fire insurance policies issued by defendants, particularly as they insured against loss by windstorm. Plaintiffs own a beachfront house at Lavallette. They claim that it sustained damage covered by the contracts of insurance here in question as a result of a very severe wind and rain storm on November 6, 1953. The damages are said to include shingles blown from the roof and side, a television antenna torn down, linoleum on the floors damaged by water, a storm door blown off and sand blown high against the rear of the building, requiring its removal and causing such scaling of the exterior paint as to necessitate repainting the exterior. The district court found for the plaintiffs in various amounts allocable to each of the items of damage mentioned.
The defendants appeal, asserting (1) the losses were not proven to have been within the coverage delineated by the policies; (2) conditions precedent as to notice and proofs of loss were not complied with by plaintiffs. It is represented to us by defendants that their appeal is impelled by the circumstance that the construction of a windstorm policy in such a situation as this has not had prior adjudication in this State.
*4 The factual background afforded by the appendix is sparse. There is unfortunately almost as much colloquy as testimony. It appears that the storm on November 6, 1953 produced a "very high tide." Mr. Brindley testified that when he got to the property the morning after the storm he observed "that there were four houses washed out to sea" and that "the boardwalk was all down in front of my house"; that the ocean was "very high" but the "water had subsided some"; and that sand was blowing and "piling up in back of the house." He was not at the house during the day of the storm. There was no eye-witness to the direct action of the storm on the property. The witness Bloom lives in Lavallette and was there on November 6. He testified there was "a lot of wind and a lot of rain," a "hurricane." But he did not see the property in question until five days later.
Mr. Brindley testified that he purchased the building November 5, 1951 and rebuilt it practically entirely, including repairs to the roof and asbestos shingles on the outside. The day after the storm he found
"* * * Sand blown up under the eaves. The doors were completely barred from entrance * * * the sand was blown against the doors * * * The shingles were off the roof. Water was in a pool on the floor of the bedrooms. The living room ceiling was damp * * * Water covered nearly two thirds of the living room floor. New shingles were cracked. The aerial was down. The screen door was blown off or missing * * *."
Objection by defendant to the use of the word "blown" by the witness as calling for a conclusion as to the cause of the damage was overruled. Over objection the witness was permitted to state that the cause of the damage was "the storm."
The witness Bloom testified that he had been working on a new porch for the building "just prior" to the storm and that five days after the storm he noticed "storm damage"; "shingles missing on the roof. Shingles missing on the sides of the building. Sand blown all over." A motion to strike as to the expression "blown" was denied. He also said the floors were wet and the ceilings damp.
*5 The witness Solan testified that the day after the storm he noticed "water on the floor" in the house; that the floors were "warped"; and that the ceiling of the first floor had a "discoloration, black, a rust color." The antenna was "torn from the house," there were "some shingles blown off or some shingles missing" on the roof and side of the house. The screen door was missing. The sand was piled six feet high in the rear of the house. Two days after the storm he observed that the "paint was peeling from the house." This testimony was unsuccessfully objected to as calling for conclusions.
Another witness testified that four weeks after the storm he observed the linoleum on the floor "bent up and irregular" and "curled at the corners." He noticed that "the white paint" on the exterior "wasn't in very good shape."
Defendants offered no testimony at the trial. They urged then and repeat on appeal that the proofs offered, exclusive of incompetent conclusions as to cause, did not establish sufficiently for submission to a fact finder that the damage was attributable to causes within the coverage and not reserved by exclusionary provisions in the policies. The contracts issued by all of the defendants are identical. So far as material they read as follows:

"EXTENDED COVERAGE ENDORSEMENT NO. 4
In consideration of the additional premium for this coverage shown on this policy, and subject to provisions and stipulations (hereinafter referred to as `provisions') herein and in the policy to which this endorsement is attached, including riders and endorsements thereon, the coverage of this policy is extended to include direct loss by WINDSTORM, * * *

* * * * * * * *
PROVISIONS APPLICABLE ONLY TO WINDSTORM AND HAIL: This Company SHALL NOT BE LIABLE for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, waves, tidal wave, high water or overflow, whether driven by wind or not.
This Company SHALL NOT BE LIABLE for loss to the interior of the building or the property covered therein caused, (a) by water, rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or *6 the property covered therein as may be caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail * * *."
Whenever heretofore construed, these or substantially similar provisions of windstorm and tornado insurance policies have been held to require, as literally provided for therein, that the insured claimant establish that a given loss was due to the direct effect of wind and not to the action of water, directly or indirectly, whether or not wind driven, except solely where interior loss ensues from water which gains its entry through an opening in roof or walls made by direct action of wind. Newark Trust Co. v. Agricultural Ins. Co., 237 F. 788, 791 (3 Cir. 1916); Wootton Hotel Corporation v. Northern Assur. Co., Ltd., 57 F. Supp. 112 (D.C.E.D. Pa. 1944), affirmed on another ground 155 F.2d 988 (3 Cir. 1946); National Fire Ins. Co. v. Crutchfield, 160 Ky. 802, 170 S.W. 187, 188, L.R.A. 1915B, 1094 (Ct. App. 1914); Travelers Fire Ins. Co. v. Taylor, 171 F.2d 203, 204, 205 (5 Cir. 1948); Marks v. Lumbermen's Ins. Co. of Philadelphia, 160 Pa. Super. 66, 49 A.2d 855 (Super. Ct. 1946); Palatine Ins. Co. Ltd. v. Petrovich, 235 S.W. 929 (Tex. Civ. App. 1917). Other authorities are to be found in the annotation in 126 A.L.R. 707.
Such a policy does not obviate the possibility that a given rain and wind storm may produce both recoverable damage within the coverage and other damage within the exclusions. In such case the plaintiff's proofs must be such as to enable the fact finder to find without resort to sheer conjecture the amount of the particular loss ascribable to the hazard assumed by the carrier. Niagara Fire Ins. Co. v. Muhle, 208 F.2d 191, 194 (8 Cir. 1953); Palatine Ins. Co. Ltd. v. Petrovich, supra. Loss due to the effect of causes both within and outside the coverage, operating conjointly, is generally considered not recoverable under this kind of provision. See Newark Trust Co. v. Agricultural Ins. Co., supra; National Fire Ins. Co. v. Crutchfield, supra; Palatine Ins. Co. Ltd. v. Petrovich, supra; Coyle v. Palatine Ins. Co., 222 S.W. 973 (Tex. Comm. App. 1920). Compare *7 Unobskey v. Continental Ins. Co., 147 Me. 249, 86 A.2d 160, 164 (Sup. Jud. Ct. Me. 1952), where it was stated, though the court found no occasion so to hold, that if the proofs showed damage due to the combined force of wind and water and that the wind was the dominant cause, there might be recovery. The posture of the present case does not require any appraisal by us of the soundness of that dictum.
In resolving the issue before us we begin with certain fundamentals. Like any other kind of contract, where the terms of an insurance policy are clear a court must enforce the contract as it finds it. Flint Frozen Foods, Inc., v. Firemen's Insurance Co., 8 N.J. 606, 610 (1952). We find the pertinent provisions of the present policy clear and unambiguous in reference to the obligation of the defendants to the plaintiffs in the circumstances here presented. It was the burden of plaintiffs to show by a fair preponderance of the evidence that the damages to their building were within the coverage and not encompassed by the exclusions of liability set forth in the contracts they purchased. Habedank v. Atlantic Casualty Insurance Co., 128 N.J.L. 338 (E. & A. 1942); Parker v. Niagara Fire Insurance Co., 30 N.J. Super. 585 (App. Div. 1953); cf. Bosshardt v. Commercial Casualty Insurance Co., 124 N.J.L. 54 (E. & A. 1940). We think they failed to adduce proof sufficient to enable the district court judge, sitting as a finder of the facts, to conclude they had met that burden, except with respect to the damage to the shingles and to the antenna.
As already noted, there is no direct evidence here to support a finding that the wind, rather than tidal or ocean water, or rain seeping through the roof or walls, caused any of the damage complained of. All of the evidence is circumstantial. Most of it is tenuous. We know from the testimony that there was unusually high water at least in the immediate vicinity of this building on the day of the storm. There is nothing shown either to support or negate the hypothesis that ocean water swept through this building. There is a distinct possibility that it did. The finder of the facts could not say, on the basis of the testimony of persons *8 who saw the property the day after the storm or later, that the sand piled against the house, the missing storm door, or the water on the floor were not the work of high water or rain rather than wind alone. Moreover, there being no proof of any openings in the roof or walls caused by the direct action of the wind, or indeed at all, there was no evidential basis for him to conclude that the water on the floor came through such openings, as required by the policy as a predicate for liability, rather than by seepage of wind-driven rain through preexisting interstices or from a flow of high water. The mere conclusions of various witnesses as to the sand or the storm door having been "blown" by the wind may not take testimonial force as probative of the cause of these conditions, since conclusions as to matters not within the direct ken of a lay witness and as to which the jury is as competent as he to form a conclusion are incompetent. Priest v. Poleshuck, 15 N.J. 557, 562, 563 (1954).
The items of damage above referred to were ascribable as fairly to excluded as to included hazards after giving full weight to the competent testimony adduced at the trial. As was stated in Marks v. Lumbermen's Ins. Co. of Philadelphia, supra (49 A.2d, at page 856):
"* * * It is not enough to show that the plaintiff's loss may have been due to one or more causes for only one of which the insurer would be liable; he must individuate as the cause the one for which the insurer would be liable * * *."
Applicable to this situation is the language of the New York court in Perito v. Northern Ins. Co. of New York, 189 Misc. 204, 69 N.Y.S.2d 611, 613 (Sup. Ct. 1947) where it was said:
"The plaintiff's complaint and the annexed exhibit, herein mentioned, placed upon the plaintiff the burden of sustaining by a fair preponderance of the evidence that the damages alleged to have been incurred were due to windstorm. In other words, it was incumbent upon her to establish by a fair preponderance of the evidence that the proximate cause was windstorm.
Viewing the evidence in the entire case, I am forced to the conclusion that plaintiff has totally failed to sustain this burden of *9 proof. The most favorable aspect of her case possible is that it leaves for the jury mere conjecture or speculation. The jury must not be left to mere conjecture or speculation, and a bare possibility that the house was damaged by wind is not sufficient. When the precise cause of a happening is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then plaintiff is not entitled to recover and the evidence should not be submitted to the jury. * * *"
Therefore, as to the damage items for removal of sand, painting (allegedly due to sand), interior flooring and the storm door, we conclude there was no case for the trier of the facts in the district court to deal with.
We take a different view, however, as to the shingles and the antenna. There was no basis in the evidence, however liberally taken in favor of the defendant, to support the inference of a possibility that the entire building was engulfed in ocean or tidal waters. Reading the testimony of the witnesses free of their conclusions as to cause there still remains a testimonial residue that roof shingles were off the building and the antenna broken after the storm. It is fairly inferable from the testimony of Messrs. Brindley and Bloom that the shingles and antenna were intact before the storm. We think there was a fact issue presented as to whether the damage as to these items was due exclusively to windstorm. Were there no question as to satisfaction of the policy requirement for filing proofs of loss the judgment below might be properly modified to allow for such reduced recovery as the proofs reflected with respect to these items.
We are constrained, however, to find that there was no submission to the defendants of the proofs of loss required as a condition precedent to the liability of the defendants under the policies. Under the marginal heading "Requirements in case loss occurs" the policies read:
"The insured shall give immediate written notice to this Company of any loss, * * *"

* * * * * * * *
* * * and within sixty days after the loss, unless such time is extended in writing by this company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, * * * *10 [then setting forth the contents of the proofs]"

* * * * * * * *
"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company."

* * * * * * * *
"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, * * *."
The provisions of R.S. 17:36-6 excusing failure of an insured person to furnish proofs of loss or damage by fire unless a 60-day notice by the company is served requiring such proofs do not on their face apply to losses other than by fire and are therefore not here applicable. Cf. Finkelstein v. American Ins. Co. of Newark, N.J., La. App., 66 So.2d 383 (La. Ct. App. 1953).
Where the giving of notice of loss or the furnishing of proofs of loss is a condition precedent of liability under an insurance contract, as we conclude was here the case, non-compliance is fatal to recovery in the absence of a showing of waiver or at least of substantial compliance. Dikowski v. Metropolitan Life Insurance Co., 128 N.J.L. 124 (E. & A. 1942); Whittle v. Associated Indemnity Corp., 130 N.J.L. 576 (E. & A. 1943); cf. McNamee v. Metropolitan Life Insurance Co., 137 N.J.L. 709 (E. & A. 1948).
"A policy requirement of proofs of loss is reasonable and valid. Such proof is an essential element which must be demonstrated in the assured's case and is considered a condition precedent to recovery." 5 Appleman, Insurance Law and Practice (1941), § 3481, p. 650.
Our courts have generally held that the test is not whether an insurer is prejudiced by a breach of a condition in a policy, but simply whether the breach in fact occurred. Whittle v. Associated Indemnity Corp., supra (130 N.J.L., at page 581); Atlantic Casualty Insurance Co. v. Interstate Insurance Co., 28 N.J. Super. 81, 88 (App. Div. 1953). There is here neither showing nor suggestion of waiver as to proofs of loss.
A point is urged by defendants respecting failure to furnish immediate written notice of loss. In view of our *11 conclusions concerning proofs of loss this matter need not be considered.
The judgment is reversed and the cause remanded with directions for entry of judgment in favor of the defendants.