Harold ROBERTS, Ralph McLean, Robert Jessup, Geo. A. Murison, Andrew G. Nilles, H. E. McDonald, W. H. McDonald, M. E. Scheibner, Theodore B. Rice, Loren W. Pendell, J. E. Thoren, E. O. McLean, E. G. Branscom, S. A. Buckingham, R. E. Buckingham, Davis Bros., David G. Davis, T. R. Davis, Frank Miller, Lloyd McLean, Claude Miller, Miller Bros., E. E. Smith, Clyde W. Miller, Russell H. Hunt, Edwin Miller, Clarence Davis, Teressa M. Davis, Eugene Frederick, J. W. Buob & Sons, John A. Danielson, W. J. Hawes, Geo. Jordan & Sons, Dale Leander, Lucile E. Besel, Carl H. Viebrock, Orval Supplee, Clarence R. Edgemon, E. V. Vaughn, Charles D. Olin, James Edgemon, Clarence Adams, David Adams, W. H. Asmussen, John Carlock, Eugene Cavadini, Johnie Cavadini, Richard Daling, T. R. Hedges, Sam Iversen, F. P. Jenkin, Gene Jenkin, Carl H. Kummer, Malone & Son, H. J. Matthiesen, Matthiesen Bros., Harold Peterson, Howard Roberts, Eugene Roberts, Hollis Rommel, Gene Weimerskirch, E. A. Wesselman, Pete Williams, Emerson E. Woods, Rice Brothers, Branscom & Son, and Einer Petersen, Plaintiffs,

v.

The **FEDERAL CROP INSURANCE CORPORATION**, an agency of the United States, Defendant.

No. 1435.

United States District Court
E. D. Washington, N. D.
Jan. 30, 1958.

Kimball & Clark, Waterville, Wash., for plaintiffs.

William B. Bantz, U. S. Atty., Robert L. Fraser, Asst. U. S. Atty., Spokane, Wash., for defendant.

DRIVER, Chief Judge.

Defendant has moved for summary judgment. The motion is supported by affidavits, and plaintiffs have filed answering affidavits. The motion must be denied unless it clearly appears that without any factual controversy defendant is entitled to judgment as a matter of law.[1] For the purpose of passing upon the motion, wherever there is any difference or dispute as to the facts, I shall take the plaintiffs' version as the true and correct one.

Plaintiffs' claims are set forth in their amended complaint. Its pertinent allegations may be summarized as follows:

All of the plaintiffs are farmers who seeded wheat crops in Douglas County, Washington in the late summer of 1955. Such crops were insured against certain designated hazards, including winter-kill, by insurance policies issued by defendant. The policies each contained the following provisions:

---

[1] Rule 56, F.R.Civ.P. 28 U.S.C.A.; and Cox v. American Fidelity & Casualty Co., 9 Cir., 249 F.2d 616.

"8. Insurance period. Insurance with respect to any insured acreage shall attach at the time the wheat is seeded * * *."

"16. Time of loss. Any loss shall be deemed to have occurred at the end of the insurance period, unless the entire wheat crop on the insurance unit was destroyed earlier, in which event the loss shall be deemed to have occurred on the date of such damage as determined by the Corporation."

"6. Coverage per acre. The coverage per acre established for the area in which the insured acreage is located shall be shown by practice(s) on the county actuarial table on file in the county office. The coverage per acre is progressive depending upon whether the acreage is (a) First Stage—released and seeded to a substitute crop, (b) Second Stage —not harvested and not seeded to a substitute crop, or (c) Third Stage —harvested."

In the Spring of 1956, when the snow melted off the land, it became apparent that plaintiffs' wheat crops were "a total loss." Thereafter, on April 9, 1956, at a meeting at St. Andrews, Washington, the plaintiffs "received information from one Creighton Lawson, Washington State Director of the defendant Corporation * * *" that no claims would be paid for the loss if the plaintiffs made such claims under the policies.

As a result "of the repudiation of the contract by the defendant, plaintiffs, in order to mitigate their damage, were forced to reseed the acreage on which the winter wheat crop had been lost at a cost of $6.50 per acre" on approximately 40,000 acres.

The amended complaint also contains the following paragraph:

"That, depending on the yield of the 1956 crop as reseeded, the above mentioned repudiation of the contract by defendant may result in further damage to the plaintiffs in an amount equal to the difference between the actual amount harvested and the insured amount of wheat and that in order to perfectly protect the plaintiffs the Court should direct that the insurance be reinstated."

The plaintiffs pray for judgment for the expense of reseeding at $6.50 per acre for reinstatement of the insurance, and for other relief.

The paragraph XI quoted above, is identical to paragraph X of the original complaint verified on June 15, 1956, before the wheat crops could have been harvested. The amended complaint was filed September 23, 1957, more than a year after the 1956 harvest time. As will appear later herein, the defendant Corporation has consistently maintained that the insurance carried over and attached to the reseeded crops of the plaintiffs. It would seem, therefore, that there was no loss or damage to the reseeded wheat covered by the insurance policies, or plaintiffs would have specifically claimed the same when they filed their amended complaint in September, 1957.

The defendant is "an agency of and within the Department of Agriculture * * *" of the United States. [2] The form of crop insurance policy is prescribed in a federal regulation which has the force and effect of a statute. It was published in the Federal Register of September 21, 1951 (Vol. 16, Number 184, p. 9628 et seq.). In support of its motion, defendant calls attention to the following provisions:

"4. Insured acreage. The insured acreage with respect to each insurance unit shall be the acreage of wheat seeded for harvest as grain as reported by the insured or as determined by the Corporation, whichever the Corporation shall elect, except that insurance shall not attach with respect to (a) any acreage seeded to wheat which is destroyed (as defined in section 15) and on which

2. Sec. 1503, Title 7 U.S.C.A.

it is practical to reseed to wheat, as determined by the Corporation, and such acreage is not reseeded to wheat * * *."

"14. *Notice of loss or damage.* (a) If any damage occurs to the insured crop during the growing season and a loss under the contract is probable, notice in writing (unless otherwise provided by the Corporation) shall be given the Corporation at the county office promptly after such damage.

"(b) If a loss under the contract is sustained, notice in writing (unless otherwise provided by the Corporation) shall be given the Corporation at the county office within 15 days after threshing is completed or by October 31, whichever is earlier."

"17. *Proof of loss.* If a loss is claimed, the insured shall submit to the Corporation, on a Corporation form entitled 'Statement in Proof of Loss', such information regarding the manner and extent of the loss as may be required by the Corporation. The statement in proof of loss shall be submitted not later than sixty days after the time of loss, unless the time for submitting the claim is extended in writing by the Corporation. It shall be a condition precedent to any liability under the contract that the insured establish the production of wheat on the insurance unit, the amount of any loss for which claim is made, and that such loss has been directly caused by one or more of the hazards insured against by the contract during the insurance period for the crop year for which the loss is claimed, and that the insured further establish that the loss has not arisen from or been caused by either directly or indirectly, any of the causes of loss not insured against by the contract * * *."

"28. *Modification of contract.* No notice to any representative of the Corporation or the knowledge possessed by any such representative or by any other person shall be held to effect a waiver of or change in any part of the contract, or to estop the Corporation from asserting any right or power under such contract, nor shall the terms of such contract be waived or changed except as authorized in writing by a duly authorized officer or representative of the Corporation; * * *."

The affidavit of Mr. Creighton F. Lawson, to which is attached a sample form of the Wheat Crop Insurance Policy, recites that affiant has personally examined all the files and records of the defendant Corporation and that none of the plaintiffs has furnished a proof of loss to defendant as required by the policies. The same affidavit further states that plaintiff Ralph McLean on April 2, 1956, and plaintiff Lloyd McLean on April 13, 1956, gave notice to defendant of probable loss of winter wheat.

There is no allegation or factual showing of any kind on the part of the plaintiffs that any of them ever furnished either a notice of damage or loss, or proof of loss, with the exception of the two McLeans.

An affidavit filed herein by plaintiff Lloyd McLean states that "he presented a claim for loss of the 1956 crop by winter kill: *that the said claim was rejected by Creighton Lawson by letter; * * *."* (Emphasis supplied.)

There is also in the file an affidavit of Mr. C. M. Clark, an attorney at law, who attended the April 9, 1956 St. Andrews meeting on behalf of the wheat growers. The affidavit recites that Mr. Lawson said at the meeting that he was authorized "to speak for" the defendant Corporation; that he was in agreement with other representatives of the corporation then present that the loss was not covered by the policies; and that "if claims were filed at that time" they would be denied. Mr. Clark then advised the farmers to "reseed their lost acreage in order to mitigate their damage in view of the repudiation of the contract by Mr.

Lawson." The farmers followed his advice and did reseed the lost acreage.

Attached to Mr. Clark's affidavit as exhibits E and F are documents designated in the affidavit respectively as "rejection of the claim presented by Ralph McLean", and "rejection of the claim presented by Lloyd McLean." Exhibit E is a copy of a letter on the Spokane office letterhead of defendant. It is dated April 12, 1956, is directed to Ralph McLean, and is signed by Creighton F. Lawson, Washington State Director. The first two paragraphs are as follows:

"Our loss adjuster for Douglas County has made a preliminary inspection of your fall seeded wheat crop in response to your notice of material damage filed April 2, 1956. A copy of this preliminary inspection is enclosed.

"Since farmers are reseeding to wheat and it is practical to reseed to wheat in Douglas County, it is a condition of the contract, Section 4, that any destroyed wheat acreage be reseeded, where it is practical to reseed, in order for the insurance to attach to the acreage."

Exhibit F is a copy of a letter headed and signed the same as Exhibit E, but dated April 16, 1956, and directed to Lloyd McLean. The first paragraph reads as follows:

"This is to acknowledge your *notice of loss to your fall seeded wheat crop due to winterkill.*" (Emphasis supplied.)

The second paragraph is the same as the second paragraph of Exhibit E quoted above.

There is also attached to Mr. Clark's affidavit, copies of letters marked as exhibits G, H, and I. Exhibit G is a copy of a letter from Mr. Clark to Mr. Lawson as State Director of F.C.I.C., dated May 10, 1956. The first three paragraphs read:

"We represent several farmers in Douglas County who desired to make claims under their crop poli-

cies for damage done to the 1956 crop through winter kill. The claims were to be made under the second stage of coverage, and in reliance on paragraph 16 of the insurance policy.

"Because of the statements made at the St. Andrews meeting about the claims, if made, the farmers could readily see that it would be useless to submit them.

"Our clients therefore have now reseeded the acres killed by the winter and desire that your corporation pay them the cost of reseeding. This cost is estimated to be approximately $6.00 per acre."

Exhibit H, a copy of Mr. Lawson's answering letter to Kimball & Clark, dated May 14, 1956, is as follows:

"This is in reply to your letter dated May 10, 1956 concerning winter damage to fall seeded wheat in Douglas County.

"As you know, the wheat crop insurance policy of the Federal Crop Insurance Corporation provides that insurance does not attach to any acreage which has been destroyed and on which it is practical to reseed to wheat. Since reports from the county extension agent and other agencies indicate that 98 percent of the wheat was reseeded in Douglas County, it would appear that there is no question concerning whether or not it was practical to reseed. Since you have indicated that your clients have reseeded, the insurance remains in force and should any loss occur under the terms of the contract between the time of reseeding and harvest, the crop will be protected.

"There is no provision in the insurance contract to reimburse insureds for the cost of reseeding, other than that the reseeding practice was considered when coverages were established for the county. In counties where reseeding is considered practical, coverages are generally much higher than in counties where it is not practical to reseed.

"Your letter is being forwarded to the manager of the Federal Crop Insurance Corporation in Washington, D. C. for any further comments which he may wish to make."

Exhibit I is a copy of a letter to Kimball & Clark from the Washington office of the defendant, dated May 21, 1956. Its pertinent part is as follows:

"Our Washington State Director has forwarded for our consideration your letter of May 10, 1956, in regard to claims which several Douglas County wheat farmers expect to litigate, and a copy of his reply dated May 14, 1956.

"We believe Mr. Lawson rather adequately set forth the position of the Corporation under the reseeding requirements of the wheat crop insurance policies in his reply to your letter. There are, however, some points which were not covered and perhaps one of vital importance in this matter which we might call to your attention. This Corporation derives its existence and powers from the Federal Crop Insurance Act (7 U.S.C. 1501 et seq.). To carry out the purposes of this act, the Corporation is authorized and empowered to insure against unavoidable loss of designated commodities, including wheat, but there are certain specified limitations of authority including a provision in Section 1508(a) which reads in pertinent part as follows:

" 'Insurance provided under this subsection shall not cover losses due to the neglect or malfeasance of the producer, or to the failure of the producer to reseed to the same crop in areas and under circumstances where it is customary to so reseed, or to the failure of the producer to follow established good farming practices.'

"The reseeding requirement in paragraph 4(a) of the policy is founded upon the statutory limitation cited and we respectfully submit that the policy necessarily contains such a limitation. It is noted by reference to your letter to Mr. Lawson that you are of the opinion that paragraph 4 of the policy is not controlling in view of the language of paragraph 8 of the policy. We believe it is sufficient at this time to say that this provision must be read in the light of the statute and the corresponding limitation of paragraph 4.

"We note that your clients have now reseeded their acreages killed by the winter and purpose to take action to recover the cost of reseeding, estimated to be approximately $6.00 per acre. Our reaction to this is, and necessarily must be if we are to comply with the law, that this Corporation is without authority to reimburse insureds in such circumstances.

"As of this time insurance is still in force and should there be an insured loss under the terms of the contract on the acreage as reseeded, the insured involved will, of course, be indemnified upon proof thereof, as required. Otherwise, there is no basis for any claim."

The form of crop insurance policy here involved, as indicated by the excerpts quoted above, required the insured to give written notice to the corporation of loss or damage and to submit proof of loss. The two are separate and distinct, and serve different purposes. The notice of loss informs the company that the contingency insured against has occurred, while proof of loss supplies evidence of the particulars of the occurrence, and information necessary to enable the insurer to determine its liability, and the amount thereof. [3]

The giving of notice of loss does not dispense with the requirement that proof of loss be submitted. [4] Even as to pri-

---

3. See Ballentine's Law Dictionary (1930); 45 C.J.S. Insurance §§ 981, 982(1)a.

4. Couch on Insurance, Vol. 7, Sec. 1528; Georgia Home Insurance Co. v. Jones, 23 Tenn.App. 582, 135 S.W.2d 947, 951.

vate insurance corporations, in the absence of waiver or estoppel, there must be at least substantial compliance with a requirement that written proof of loss be furnished to the insured. [5]

In the instant case it appears that plaintiffs Ralph McLean and Lloyd McLean gave notice of loss or damage but none of the plaintiffs ever submitted to the defendant any proof of loss.

Plaintiffs rely upon the general principle of insurance law that, if the insurer, during the period in which proofs of loss are to be made, denies liability, the insurer is deemed to be estopped from invoking, or to have waived, the right to demand proofs of loss. But is the principle applicable here, where the insurer is an agency of the United States?

In his affidavit, Mr. Lawson states that "he is absolutely without any authority to either deny a claim or to approve a claim * * *." There is no affirmative showing of the extent of his authority. The statute authorizes the Secretary of Agriculture and the Corporation to issue such regulations as may be necessary (7 U.S.C.A. § 1516 (b)). The form of the policy, the extent and the limitations of the insurance coverage, the requirement as to proof of loss, and the reservations against waiver and estoppel are governed by regulations published in the Federal Register. No state director or other official, surely, would have the authority to cancel or repudiate the insurance contract of the corporation, or to make any arrangement or commitment binding upon the corporation which was contrary to, or not permitted by the governing statutes and regulations. There has not been called to my attention any regulation, statute, or provision of the insurance contract authorizing payment of the cost of reseeding an insured farmer's wheat crop. How, then, could Mr. Lawson by his conduct and represen-

tations create such liability on the part of defendant government agency? The answer is to be found, I think, in the following excerpt from the opinion in Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791, quoted with approval in United States v. City and County of San Francisco, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050:

"* * * the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."

In Felder v. Federal Crop Insurance Corporation, 146 F.2d 638, 640, the Fourth Circuit Court of Appeals applied the principle just stated in a case involving cotton crop insurance, by the same corporation named as defendant here. There the insured grower had not filed a proof of loss within the time required by the policy. The court held that right of recovery was barred and that the requirement had not been waived by action on the part of the County Committee. See also, Mock v. United States, 10 Cir., 183 F.2d 174, where it was held that recovery on a wheat crop policy of the same corporation was barred for failure on the part of the insured to submit proof of loss as required by the policy.

In Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, wheat growers in Bonneville County, Idaho, applied to the County Committee, acting as agent for the Corporation for insurance on a crop of growing wheat. Although the Committee was correctly informed that 400 acres consisted of reseeded winter wheat acreage, it erroneously advised the growers that the entire crop was insurable, and upon its recommendation, the Corporation accepted the application. The crop was destroyed by drought, but the Corpora--

5. Wedgwood v. Eastern Commercial Travelers Acc. Ass'n, 308 Mass. 463, 32 N.E.2d 687; Standard Acc. Ins. Co. v. Cherry, Tex.Civ.App., 48 S.W.2d 755; Milton Ice Co. Inc. v. Travelers Indemni-

ty Co., 320 Mass. 719, 71 N.E.2d 232; Brindley v. Firemen's Insurance Co. of Newark, N. J., 35 N.J.Super. 1, 113 A.2d. 53.

tion refused to pay the loss on the ground that the Wheat Crop Insurance Regulations did not authorize insurance of re-seeded wheat and, hence, barred recovery as a matter of law. The Supreme Court sustained the contention and reversed the court of appeals which had affirmed the district court. The following language of the opinion, I feel, is applicable in the instant case as well:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." 332 U.S. at pages 383, 384, 68 S.Ct. at page 2.

Defendant's motion is granted and summary judgment will be entered dismissing the action as to each and all of the plaintiffs.