**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4894-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOHN R. SALYERDS,

      Defendant-Appellant.

_____

              Argued January 8, 2019 – Decided February 8, 2019

              Before Judges Accurso, Vernoia and Moynihan.

              On appeal from Superior Court of New Jersey, Law Division, Burlington County, Municipal Appeal No. 7-17.

              Robert C. Wolf argued the cause for appellant.

              Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

Following a trial de novo in the Law Division, defendant John R. Salyerds appeals from a June 6, 2017 order finding him guilty of engaging in prostitution as a patron, N.J.S.A. 2C:34-1(b)(1).  For the reasons that follow, we vacate defendant's conviction and remand for further proceedings.

I.

On August 25, 2016, defendant was arrested in a Mount Laurel Township motel room and charged with engaging in prostitution as a patron.  Prior to the commencement of his municipal court trial, defendant sought dismissal of the charge because the police failed to preserve or otherwise destroyed what he contended is exculpatory evidence.  The State alleged his arrest resulted from a Mount Laurel Police Department operation during which officers posted internet ads soliciting individuals to call a phone number to arrange a meeting with a prostitute.  Defendant asserted the State had been deceitful and evasive in responding to his requests for the ads during discovery and failed to provide the ad the State alleged was posted on August 25, 2016, and to which defendant purportedly responded in taking the actions leading to his arrest.

The State argued the ad offered a "$50 short stay special" and included a phone number to arrange for it, but the State never produced the ad during discovery.  Defendant claimed production of the August 25, 2016 ad was critical

2

to his defense and potentially exculpatory because the State intended to rely on what the ad stated as evidence defendant engaged in prostitution as a patron.

Defense counsel explained his efforts to obtain the ad from the State during discovery, detailed the State's responses and argued the State may have acted in bad faith in failing to preserve and provide the August 25, 2016 ad. Defendant argued the ad constituted exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 87 (1963), and the State's destruction or loss of the ad required dismissal of the charge.

During the pretrial argument on defendant's motion to dismiss the charge, the municipal prosecutor represented that the Mount Laurel Police Department conducted operations to catch individuals seeking prostitutes by placing internet ads that "solicit[] individuals to come to [a] hotel for a specific purpose." The prosecutor told the court that the police department continually posted ads, but did not print the August 25, 2016 ad because "the detectives did not have access to a printer." The prosecutor explained that the ads "fall off" the internet site after a certain time and then cannot be retrieved. The prosecutor noted that when the Mount Laurel Police Department attempted to retrieve ads two weeks after defendant's arrest, they printed the ads they could locate but could not find "the mysterious [August 25, 2016] posting which talks about a $50 sale." The

3

prosecutor noted the State produced other posted ads "that are virtually identical" to the missing ad, and asserted the missing ad was not critical because a recording of defendant at the motel "is the crucial piece of evidence."

The municipal court judge denied the dismissal motion and the matter proceeded to trial. The evidence showed that prior to arriving at the motel room defendant called a telephone number that had been listed in various internet ads placed by the Mount Laurel Police Department.[1] The ads were posted as part of a police operation intended to solicit individuals to come to a motel to meet a female undercover detective posing as a prostitute. A detective testified the ads solicited "sexual activities," but there was no evidence about the specific content of any of the ads and the municipal court judge barred testimony concerning the content of the August 25, 2016 ad to which the State alleged defendant responded the day he was arrested.

The evidence further showed defendant made a telephone call, spoke to a female undercover detective, asked for the "$50 special"[2] and made

---

[1] There is no evidence showing the dates the various ads were posted on the internet.

[2] The female undercover detective did not testify at trial. It was stipulated that defendant "asked for the $50 special" during his telephone conversation with the detective.

arrangements to meet the detective at a motel room. Shortly after the phone call ended, defendant arrived at the motel room and was greeted by the undercover detective. An audio recording of the motel room encounter reveals defendant said he was there for the "short stay special."[3] The detective invited defendant into the room, and told him to have a seat and "put the money on the table" while she went into the bathroom "to freshen up."

Seconds later, other detectives entered the room and arrested defendant. Defendant said he did not do anything and there was "no touching." The detectives recovered $50 on a table. The money was not on the table prior to defendant's entry into the room.

During the trial, the municipal prosecutor asked a detective who participated in the operation, "What is the short stay special?" Defendant objected, arguing the question called for expert testimony and that the detective had neither been designated nor qualified as an expert. The court overruled the objection, finding the question did not call for expert testimony and required only that the detective testify as to his understanding of the term.

_____

[3] The recording is not included in the record on appeal. We discern the content of the recording from the briefs of the parties and note the parties do not dispute the undercover detective and defendant made the statements quoted in this opinion.

The detective testified a "short stay special" is "an agreement between two people to engage in an act of prostitution under circumstances where they agree to the act and the amount itself." The detective arrived at that understanding of the term "based on [his] training and experience as a detective." He further testified he could not "recall [the term] being a . . . common term."

The municipal court judge found defendant guilty of engaging in prostitution as a patron. During the trial de novo on defendant's appeal of his conviction, the Law Division judge noted that the ad the State asserted was involved in defendant's alleged solicitation of the undercover detective was not produced in discovery and that defendant claimed the charge should be dismissed on that basis. The court rejected defendant's contention that the destruction or failure to preserve the ad constituted a Brady violation. The court found it highly unlikely the ad was exculpatory because the testimony showed the general nature of the police department's ads, and the August 25, 2016 ad "was more inculpatory than anything."

Addressing the merits of the State's case, the judge found the Mount Laurel Police Department "placed an online advertisement, a series of them as a matter of fact, one of which offered services for $50 under what was known as a short-stay special." Based on his review of the audio recording of defendant

6

at the motel room, the judge found defendant told the undercover detective he "wanted the short-stay special" and entered the room. The judge further found the detective told defendant to take a seat and put the money on the table while the detective went into the bathroom. The judge found defendant was arrested by other detectives who entered the room, and said he did not do anything and there was "no touching." An officer asked defendant what the money on the table was for and defendant said, "it's money, money for time."

The judge found the detective's testimony concerning the meaning of "short-stay special" constituted an admissible lay opinion which was supported by an adequate foundation. The judge noted the opinion was based on the detective's prior experience in similar operations. The judge also found the term "was used in the original ad that was posted for the services which the defendant hoped to buy for $50, short-stay special." The judge reviewed the detective's testimony that, based on the detective's experience, he understood the term described "an agreement between two people to engage in an act of prostitution."

The court further noted that during the telephone call prior to his arrival at the motel, defendant asked for the "[fifty]-dollar special," and defendant placed the $50 found on the table because there was no money on the table before defendant entered the room. The court found the State's witnesses were

credible and the evidence established beyond a reasonable doubt that defendant

was guilty of engaging in prostitution as a patron. This appeal followed.

On appeal, defendant makes the following arguments:

POINT ONE

THE COURT FAILED TO ADDRESS THE BAD FAITH OF THE PROSECUTOR WHO LIED ABOUT THE EXISTENCE OF MATERIAL EVIDENCE[.]

POINT TWO

THE TESTIMONY OF OFFICER RYAN ORANGE REGARDING THE TERM "SHORT STAY" WAS EXPERT TESTIMONY THAT SHOULD NOT HAVE BEEN ADMITTED, AND IN THE ALTERNATIVE, IT COULD NOT HAVE BEEN CONSIDERED LAY TESTIMONY TO COMMON STREET SLANG, AS THE OFFICER TESTIFIED THAT IT WAS NOT A COMMON TERM.

[A]. EXPERT TESTIMONY

B. LAY OPINION TESTIMONY REGARDING STREET SLANG

II.

On an appeal taken from the Law Division's final decision after a trial de

novo, "[o]ur review is limited to determining whether there is sufficient credible

evidence present in the record to support the findings of the Law Division judge,

not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639

A-4894-16T4

(App. Div. 2005). This requires "'consideration of the proofs as a whole,' and not merely those offered by the defendant." State v. Kuropchak, 221 N.J. 368, 383 (2015) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" Ibid. (alteration in original) (quoting R. 2:10-2). We review the Law Division's interpretation of the law de novo without according any special deference to the court's interpretation of "the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant first contends the Law Division judge erred by denying his motion to dismiss the charge based on the State's purported Brady violation. Defendant argues the police department's destruction of or failure to preserve the August 25, 2016 ad constituted the suppression of exculpatory evidence that requires dismissal of the charge. Defendant further argues that even if the ad was only probably exculpatory, dismissal is required because the State acted in bad faith by either destroying or failing to preserve the ad.

"A prosecutor's obligation to 'turn over material, exculpatory evidence to the defendant' is well established . . . ." State v. Nash, 212 N.J. 518, 544 (2013) (quoting State v. Morton, 155 N.J. 383, 413 (1998)). "A breach of this duty of disclosure—

in appropriate circumstances—violates a defendant's due process rights." Ibid. (citing Brady, 373 U.S. at 87).

A Brady violation occurs when the prosecution suppresses evidence that is material and favorable to the defense. State v. Martini, 160 N.J. 248, 268 (1999). "[T]o establish a Brady violation, defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material[.]" State v. Nelson, 330 N.J. Super. 206, 212 (App. Div. 2000) (citing Martini, 160 N.J. at 268). "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" State v. Robertson, 438 N.J. Super. 47, 67 (App. Div. 2014) (quoting State v. Knight, 145 N.J. 233, 246 (1996)), aff'd on other grounds, 228 N.J. 138 (2017).

"It is only the suppression of exculpatory evidence that violates due process 'irrespective of the good faith or bad faith of the prosecution.'" George v. City of Newark, 384 N.J. Super. 232, 243 (App. Div. 2006) (quoting Brady, 373 U.S. at 87). Where, as here, the evidence "is no longer available, to establish a due process violation a defendant may show that the evidence had 'an exculpatory value that was apparent before [it] was destroyed' and that 'the defendant would be unable to obtain comparable evidence by other reasonably available means.'" State v.

Mustaro, 411 N.J. Super. 91, 102 (App. Div. 2009) (alteration in original) (quoting California v. Trombetta, 467 U.S. 479, 489 (1984)).

If the value of the evidence is unknown and "the defendant cannot establish that the now lost evidence had 'apparent' exculpatory value and can show only that the evidence was 'potentially' useful or exculpatory, then the defendant can show a due process violation by establishing that the evidence was destroyed in bad faith." Id. at 103 (citation omitted).

Here, defendant makes no showing the August 25, 2016 ad was either favorable or material. See Nelson, 330 N.J. Super. at 212. Although the witnesses were barred from testifying about the ad's contents, the testimony established the ad was presented in a series of advertisements during the police department's operations designed to solicit phone calls to a designated number from individuals seeking a prostitute. There is nothing in the evidence to suggest the August 25, 2016 ad was in any manner different than the other ads, some of which were produced during discovery. Thus, the court's finding the missing ad was more likely inculpable is supported by the record, and the record is otherwise bereft of evidence showing the missing ad is exculpatory under the Brady standard. See Robertson, 438 N.J. Super. at 67.

A-4894-16T4

Defendant argues the evidence was potentially useful and therefore should have been excluded because the State acted in bad faith. See Mustaro, 411 N.J. Super. at 103; see also State v. Hollander, 201 N.J. Super. 453, 479 (App. Div. 1985) (finding that where a court is asked to dismiss charges because evidence is destroyed, it must in part consider "whether there was bad faith or connivance on the part of the government"). "Without bad faith on the part of the State, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" George, 384 N.J. Super. at 243 (quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988)).

We reject the State's contention that we should not address defendant's argument that the State acted in bad faith because the claim was not asserted before the Law Division. See generally State v. Robinson, 200 N.J. 1, 19-20 (2009) (explaining that appellate courts may decline to address issues that are not presented to the trial court). Defendant argued in the municipal court that the charge should be dismissed because the State destroyed or failed to preserve the August 25, 2016 ad in bad faith and renewed his motion for a dismissal, albeit without expressly mentioning the State's alleged bad faith, during the trial de novo in the Law Division. In our view, a fair reading of defendant's Law Division arguments reflects defendant

reprised his claim the State destroyed or failed to preserve the missing ad in bad faith. We therefore address the merits of defendant's contention.

Our review of the record reveals no evidence supporting even a suggestion that the State's destruction or failure to maintain the ad was the product of bad faith. Defendant argues bad faith is established because the municipal prosecutor provided inconsistent and conflicting responses to defendant's requests for the ad. The prosecutor's responses, however, do not support a finding that the State acted in bad faith by destroying or failing to preserve the August 25, 2016 ad. At worst, they demonstrate only that the municipal prosecutor was misinformed about the existence of the ad or exhibited a lack of candor in providing responses about its existence.

In any event, under the circumstances presented here, in assessing defendant's dismissal motion, the relevant inquiry was whether the State acted in bad faith by destroying or failing to preserve the ad, not whether the prosecutor accurately informed defendant about its existence. See Youngblood, 488 U.S. at 57-58 (1988) (holding that "unless a . . . defendant can show bad faith on the part of the [State]" in destroying or losing the evidence, "failure to preserve potentially useful evidence does not constitute a denial of due process of law"). Defendant points to no evidence the State acted in bad faith by destroying or failing to preserve the evidence. Instead, it was represented to the court that the August 25, 2016 ad was not copied because

13

the police had no printer readily available on the day the ad was posted. There is also no showing the State destroyed the ad. The ad was lost due to the operation of the internet site on which it was posted, and not the result of any actions by the police. Indeed, despite the police department's efforts, the ad could not be retrieved later because the ads "fall off" the internet site after a period of time. In sum, the Law Division judge correctly denied the dismissal motion because the record is barren of any evidence showing the loss or destruction of the ad was the result of any bad faith of the State.

Defendant next contends the court erred by relying on the detective's testimony that the phrase "short stay special" means "an agreement between two people to engage in an act of prostitution under circumstances where they agree to the act and the amount itself." Defendant argues the testimony constituted an inadmissible expert opinion because the detective was not qualified as an expert and defendant was not provided with information concerning the putative expert and his proposed testimony prior to trial as required by Rule 3:13-3(b).[4] The

---

[4]    In pertinent part, Rule 3:13-3(b)(1)(I) requires that the State provide as pretrial discovery the:

> names and addresses of each person whom the prosecutor expects to call to trial as an expert witness, the expert's qualifications, the subject matter on which

State contends the detective's testimony was properly admitted as a permissible lay opinion.

The Law Division judge determined the detective's testimony was admissible as a lay opinion under Rule 701. See N.J.R.E. 701. The court noted the detective provided "some foundation" for his testimony based on his "training and experience as a detective," and found "[t]he term was testified to by [the detective] as being used in the original ad that was posted for the services which defendant hoped to buy for $50, short-stay special."

"The necessity for, or propriety of, the admission of expert testimony, and the competence of such testimony, are judgments within the discretion of the trial court." State v. Zola, 112 N.J. 384, 414 (1988). We therefore "apply a deferential standard of review to [a] trial court's evidentiary rulings." State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017), certif. denied, 232 N.J. 301

the expert is expected to testify, a copy of the report, if any, of such expert witness, or if no report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion . . . [I]f this information is not furnished [thirty] days in advance of trial, the expert witness may, upon application by the defendant, be barred from testifying.

[R. 3:13-3(b)(1)(I).]

(2018). Where "the trial court applies the wrong legal test when analyzing admissibility, we review the issue de novo." Ibid.

The parties do not dispute that opinion testimony concerning the meaning of "short stay special" was required because it "assist[ed] the [court] in performing its [fact-finding] function," State v. McLean, 205 N.J. 438, 456 (2011), and the court was not "as competent as [the detective] to form a conclusion" concerning the phrase's meaning, id. at 459 (quoting Brindley v. Fireman's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)). Thus, the admissibility of the detective's opinion turns on whether he offered expert or lay testimony.

Lay opinion testimony "must 'rest[] on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing.'" Hyman, 451 N.J. Super. at 442 (alteration in original) (quoting McLean, 205 N.J. at 457); see also N.J.R.E. 701 (providing that lay witness testimony may be admitted "if it . . . is rationally based on the perception of the witness"). "[U]nlike expert opinions, lay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." McLean, 205 N.J. at 460.

In contrast, "expert testimony depends on a witness's 'specialized knowledge' to address matters outside a juror's understanding." Hyman, 451

N.J. Super. at 443; see also N.J.R.E. 702. Admission of expert testimony requires that "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony." Hyman, 451 N.J. Super. at 443-44 (quoting State v. Kelly, 97 N.J. 178, 208 (1984)). Thus, "a question that refer[s] to [an] officer's training, education and experience, in actuality call[s] for an impermissible expert opinion." Id. at 444 (quoting McLean, 205 N.J. at 463).

In Hyman we determined that a detective's testimony about the meaning of "certain drug-related jargon," id. at 438, constituted expert, and not lay, opinion testimony because "[t]he basis of his opinion . . . was his training, education and experience—not his 'own senses,' perceptions and observations," id. at 448-49. We explained the detective had not conversed with the defendant when the jargon was used and, although his "knowledge of [the] investigation" included "familiarity with . . . wiretapped conversations," his testimony "did not become a lay opinion because he heard the wiretaps . . . any more than a non-treating physician's diagnosis becomes a lay opinion because the physician's own hands were used to conduct an independent medical examination." Id. at

17

449 (first alteration in original). Moreover, we noted that "[a] witness may not offer a lay opinion that a person must have been talking about drugs simply because he is personally aware of evidence the person was dealing drugs." Ibid.

Here, the court abused its discretion by failing to apply the appropriate legal standard in determining the admissibility of the detective's testimony about the meaning of the term "short stay special." See McLean, 205 N.J. at 464 (finding a court abuses its discretion by applying the wrong legal standard for the admission of testimony). The testimony was not "firmly rooted in the [detective's] personal observations and perceptions," id. at 459, or on any interactions with defendant and, therefore, did not constitute an admissible lay opinion, Hyman, 451 N.J. Super. at 448-49; cf. State v. Johnson, 309 N.J. Super. 237, 262-63 (App. Div. 1998) (holding a witness's testimony about the meaning of a term used by the defendant was admissible lay opinion in part because the witness participated in the conversation during which the term was used and explained only his understanding of the term). As the detective explained, his understanding of the term and his opinion about its meaning were based on his training and experience. His testimony therefore constituted a putative expert opinion, which was inadmissible because the State failed to identify the detective as an expert witness prior to trial, see R. 3:13-(b)(1)(I), and the

18

detective was never qualified as an expert, see <u>Kelly</u>, 97 N.J. at 211 (holding that a putative expert witness must first be qualified by the court as an expert prior to offering an expert opinion). The court erred by finding otherwise.

We also observe that the court's reliance on the detective's opinion testimony was misplaced for another reason. In its decision, the court determined there was a foundation for the detective's testimony about the meaning of "short stay special" because the detective also testified the term was "used in the original ad that was posted for the services which the defendant hoped to buy for $50, short-stay special." This finding is bereft of support in the record. The detective never provided such testimony. To the contrary, the detective's testimony concerning the meaning of the term "short stay special" is untethered to any evidence it was used in the August 25, 2016 ad because the court barred any testimony concerning what the ad said.

Defendant objected to the detective's testimony concerning the meaning of the term "short stay special," and we determine whether its admission constitutes harmless error. <u>R.</u> 2:10-2. "The harmless error standard . . . requires that there be 'some degree of possibility that [the error] led to an unjust [verdict]. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the [fact finder] to a verdict it otherwise might not have reached.'" <u>State v.</u>

R.B., 183 N.J. 308, 330 (2005) (second and fourth alterations in original) (citation omitted).

Based on our review of the record, we are convinced the court's error in admitting the detective's expert opinion testimony raises a reasonable doubt as to whether the court, acting as the fact finder, rendered a verdict it otherwise might not have reached. The meaning of the term "short stay special" is the fulcrum upon which the State's case against defendant turns. There is no evidence defendant asked for a prostitute or solicited sex during the phone call or his brief interaction with the undercover detective at the motel. He requested only the "short stay special." The court barred any testimony concerning the content of the ad, which may or may not have included the term "short stay special" or linked the use of the term to the procurement of a prostitute.

The State's case was based in great part on what defendant intended when he asked for the "short stay special" and announced he was at the motel room for the "short stay special." The State relied on the detective's testimony to define the term and the court utilized the testimony, as well as its unsupported finding the detective testified about the August 25, 2016 ad's contents, to conclude defendant's use of the term constituted a solicitation of a prostitute. Without the detective's testimony and any showing of the ad's contents, the

A-4894-16T4

State's case is clearly different and more difficult.[5]  The record is otherwise devoid of any direct proof concerning the term's meaning and defendant's intentions must be gleaned from all of the other attendant circumstances.  As a result, we are convinced admission of the detective's opinion was clearly capable of producing an unjust result and requires a new trial de novo in the Law Division.

We vacate defendant's conviction and remand to the Law Division to conduct a trial de novo on the record before the municipal court, but without consideration of the detective's opinion testimony concerning the meaning of "short stay special."[6]  Because the judge who conducted the trial de novo from

---

[5] Our observation that the State's case is "more difficult" without the detective's opinion testimony and evidence showing the ad's contents is not an expression of an opinion or finding on defendant's guilt or innocence.  It is only a recognition the State's case would be more clearly established if it presented competent evidence establishing the meaning of the term "short stay special" and had produced an ad stating in some manner that a "short stay special" related to the procurement of a prostitute.  We express no opinion as to whether the admissible evidence establishes defendant committed the offense charged beyond a reasonable doubt.  That decision shall be made by the court, acting as a fact-finder, during the trial de novo on remand.  Our decision suggests nothing to the contrary.

[6] We also caution the remand court to ignore the municipal judge's statements concerning his knowledge of other similar operations conducted by the Mount Laurel Police Department. See Wallington Home Owners Ass'n v. Borough of Wallington, 130 N.J. Super. 461, 465 (App. Div.) ("A judge's private knowledge

which this appeal was taken has made credibility determinations, and our remand requires new findings of fact, we are constrained to require the trial be held before a different judge on remand.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

is entitled to no weight at all."), aff'd o.b., 66 N.J. 30 (1974); Amadeo v. Amadeo, 64 N.J. Super. 417, 424 (App. Div. 1960) (finding "[a] judge's private knowledge is no substitute for required proof" and "is entitled to no weight" in making factual determinations).

A-4894-16T4