NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0296-13T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SCOTT ROBERTSON,

    Defendant-Appellant.

_____

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**November 14, 2014**

**APPELLATE DIVISION**

</div>

Submitted September 9, 2014 — Decided November 14, 2014

Before Judges Messano, Ostrer and Hayden.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 13-023.

John Menzel, attorney for appellant.

Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Scott Robertson appeals from his September 2013 conviction, after a trial de novo, of driving while under the influence of intoxicating liquor (DWI), N.J.S.A. 39:4-50. Defendant's appeal pertains mainly to the admissibility of

Alcotest results showing he had a blood alcohol level of .13. Defendant unsuccessfully argued that he was entitled to discovery of certain data and repair records of the specific Alcotest device used. He asserted that the State's failure to provide such discovery compelled exclusion of the Alcotest results. After the court denied defendant's motion, he agreed to a trial on stipulated facts.

Defendant renews his arguments before us, and we affirm, in light of the factual record and applicable principles of law. Neither State v. Chun, 194 N.J. 54, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008), nor established principles of discovery, compel exclusion of the Alcotest results.

We also choose to address an important issue not raised by the parties pertaining to the stays of defendant's license suspension pending appeal entered by both the municipal court and the Law Division. We instruct trial courts that any stay of a license suspension after conviction should be supported by adequate findings of fact and conclusions of law, and should comply with standards governing the grant of a stay pending appeal.

2

We discern the following facts from the record, including testimony presented at an unsuccessful suppression motion challenging probable cause to arrest.[1] Defendant was stopped on August 11, 2012, shortly before 2:00 a.m., after a Wall Township Police Officer observed defendant repeatedly encroach upon the fog line. After approaching defendant's convertible, the officer detected the strong odor of alcoholic beverage. Defendant admitted that he drank a small number of beers, but denied being intoxicated. The officer asked the defendant to submit to a field sobriety test. According to the officer, defendant performed poorly. He was unable to follow the officer's instructions and lost his balance on several occasions.[2]

The officer arrested defendant and transported him to police headquarters. Defendant was administered breath tests on an Alcotest 7110 MKIII-C device (Alcotest). After producing the .13 BAC result, he was charged with DWI, N.J.S.A. 39:4-50, as

---

[1] The order denying the suppression motion is not before us on appeal.

[2] The stop was captured on a video-recording which was admitted into evidence, and viewed by the municipal court and Law Division. It is not part of the record before us.

well as failure to maintain a lane, N.J.S.A. 39:4-88(b), and reckless driving, N.J.S.A. 39:4-96.

The municipal court denied defendant's motion for a jury trial, and his motion to suppress evidence based on an alleged lack of probable cause to arrest. The court then denied defendant's motion to exclude the Alcotest results based on the asserted denial of discovery after a non-testimonial hearing on May 1, 2013. Defendant supported his motion with an expert's report.[3]

A.   The Discovery Dispute

Although defendant presented an extensive demand for discovery, only two categories of requests remain relevant to this appeal. First, defendant sought more detailed records associated with the repair of the particular Alcotest device used in defendant's case, identified by serial number ARXA-0037. Second, defendant sought "data downloads" of various diagnostic tests of the device. Defendant argued that hard copies of the

---

[3] The State did not question the author's qualifications as an expert in the operation of the Alcotest device, nor did the State object to the court's consideration of the expert report as evidence on the motion, although it was unaccompanied by a proper certification. See R. 1:6-6 (stating that where "a motion is based on facts not appearing of record or not judicially noticeable," the facts shall be presented by affidavit or certification made on personal knowledge, and admissible in evidence).

test results were incomplete.  We address these requests in turn.

With respect to repair records, defendant received, or had access to, through the State's database, several documents reflecting that the device was returned to its manufacturer, Dräger, in November 2008 and September 2011, for service.[4]  In both November 2008 and September 2011, Dräger replaced the fuel cell and calibrated the device.[5]  In September 2011, a second

---

[4] Defendant's expert asserted that defendant received or had access, through the State Police's database — which the expert called a "data depository" — six documents: (1) a "Draeger Safety Equipment Return Form" dated November 17, 2008; (2) a "Dräger Return & Repair Form" dated November 18, 2008; (3) a packing slip dated November 20, 2008; (4) a "Breath Testing Instrumentation Service Report" dated September 7, 2011; (5) a "Dräger Return and Repair Form" dated September 13, 2011; (6) a packing slip dated September 20, 2011; and (7) a second "Breath Testing Instrumentation Service Report" dated September 29, 2011.  Only documents (2) and (5) are included in the record before us.  We obviously cannot address documents not included in the record.  See R. 2:6-1(a) (stating that the appendix "shall contain . . . such other parts of the record . . . as are essential to the proper consideration of the issues."); see also Johnson v. Schragger, Nagy & Krasny, 340 N.J. Super. 84, 87 n.3 (App. Div. 2001) (noting failure to supply documents "essential to the proper consideration of the issues hinders our appellate review.") (internal quotation marks and citation omitted).  Consequently, we cannot determine whether the machine was serviced once or twice in September 2011.

[5] Defendant's expert asserted that the machine was manufactured in 2006, but was not placed into service until November 2008.  The expert explained that machines that were "shelved," as apparently was the case here, often needed new fuel cells before being placed into service.

5

replacement part, described only as a "Plate," was apparently installed.

Defendant sought the results of various tests that Dräger performed after replacing the fuel cell, before returning the machine. Defendant's expert asserted, "Actual opening of the instrument and measurement and adjustment of critical internal operating values can only be done by Dräger at its service center." He asserted that "the steps of this procedure and the values obtained and/or which are set by Dräger are recorded on a checklist completed at the Dräger Service Center . . . ." The expert distinguished these documents from the calibrations conducted by the State Police breath test coordinators. He minimized these as, "simple check[s] to see if the instrument can read assayed" solutions "within acceptable tolerances and that these readings fall within a specified parameter, and fit to a line or are 'linear.'" Defendant presented exemplars of Dräger's test results, which were also included in the record before the Special Master in Chun.

Defendant's expert argued that Dräger's internal measurements and adjustments were essential parts of a "complete Dräger Repair Record," and were essential to indicate "what, if any, service was performed in the subject instrument, even if said service was performed prior to the instrument being placed

6

into service." He asserted that the documents were needed in order to obtain a "complete picture of the operability of the instrument."

As of September 4, 2012, the machine produced 680 Alcohol Influence Reports (AIR). These were reflected in nine data downloads in connection with nine complete calibration cycles. Defendant's expert explained that an Alcotest coordinator downloads data during recalibration, which must occur at least semi-annually, under Chun, supra, 194 N.J. at 153.[6] There were gaps in the numbered AIRs. For example, the seventh data download on September 7, 2011 covered AIR breath tests 397 through 489 between March 31, 2011 and September 6, 2011. The eighth data download on March 7, 2012 covered AIR breath tests 501 through 554 between October 23, 2011 and March 5, 2012.

Defendant's expert asserted that repair records were needed to understand the gaps in breath tests. For example, eleven breath tests were missing between September 7 and October 22, 2011. However, the expert stated that gaps usually "indicate

_____

[6] Also, after an Alcotest device performs 500 tests, Alcotest coordinators typically download all the data on the device to "avoid the instrument's tendency to slow down as it searches large numbers of files. After downloading, all information in the Alcotest 7110 is removed but the sequential file numbers continue." Findings and Conclusions of Remand Court, Special Master Report (SMR) 104, February 14, 2007. Downloads are also performed before the machine is shipped for service. Ibid.

7

that the instrument has suffered a service issue . . . and in many cases has been returned to Dräger for service and/or repair."  That may have been the case here, as the gaps cited coincide with the 2008 and 2011 repairs.

Defendant also sought, in electronic format, the nine data downloads.  However, only three file record types remain at issue on appeal: the calibration test, the control test, and the linearity test.  These three files are identified by the following numbers, respectively: 21NJ3-11, 22NJ3-11, and 58NJ3-11.  Defendant argued that the data files "must have existed in order for the Alcotest instrument to generate the corresponding Calibration Record and Calibration Record, Part I-Control Tests, and Part II-Linearity Tests reports."  Defendant did not dispute that he received the "corresponding" records and reports.  He argued that the data files stored in the device included more information than contained in the paper records, in particular, "the results of pre- and post-test diagnostics," and "firmware version number and operational perimeters . . . derived from the electronic files."  He claimed "[s]uch information goes directly to Alcotest operability."  Defendant received data downloads for the subject breath test and solution change test.  He asserted other tests should have been provided as well.

8

Defendant's expert stated that "the data downloads provided [were] insufficient to determine the operability of the instrument." The expert asserted that Dräger has described the pre-test and post-test diagnostic checks "as verifying that the test records are correct and that all diagnostics checks were performed." Another field of information, included in the device's data storage but not disclosed in the paper records, captures any one of several errors identified in the operator's manual. The data also include time stamps of each event that occurred within the breath testing sequences, as well as any aborted tests.

The expert argued that the Supreme Court recognized the data's importance when it ordered the creation of a centralized database of downloaded Alcotest results. See Chun, supra, 194 N.J. at 153 (ordering the State to "[c]reate and maintain a centralized statewide database, comprised of downloaded Alcotest results, and shall make the data, following appropriate redactions of personal identification as needed, available to defendants and counsel"). The expert asserted that the State had established "a centralized data depository," but not a centralized database; the data did not permit cross file access; it was incomplete; and it lacked file integrity.

9

In support of his argument that the data downloads were essential, notwithstanding that he received corresponding hard copy reports, defendant noted that the New Jersey State Police's Forensic Laboratory Director had compared data files and hard copies in connection with his presentations in the Chun hearings. Defendant argued to the municipal court that defendant was "simply attempting to replicate this simple safeguard to assure operability of the Alcotest instrument used. . . ."

The lab director, Thomas A. Brettell, compared hard copy reports with electronic data downloads of twenty-five devices used in twenty-five different police departments in Middlesex County, involving 1865 tests during 2005. According to his report, which defendant submitted to the court, there were no discrepancies.[7]

Our record does not reflect that the State presented any evidence or expert opinion in opposition to defendant's assertions regarding the need for the repair-related records, or the data that was not included in the paper disclosures. The State also presented no evidence regarding why the data, which

---

[7] Dr. Brettell's comparison is discussed in the Special Master's report. Findings and Conclusions of Remand Court, SMR 104, February 14, 2007.

is generated and stored in the device, was not downloaded and made available to defendant.

However, the State has provided to defense counsel in other DWI cases a 2009 memorandum from the State Police's Director of Forensic Sciences "explaining that the data at issue could not be supplied in downloadable form because it was routinely erased following each re-calibration." State v. Pechko, No. A-0871-11 (App. Div. May 13, 2013) (slip op. at 2), certif. denied, 218 N.J. 274 (2014); see also State v. Lobo, No. A-4477-11 (App. Div. August 28, 2013), certif. denied, 217 N.J. 296 (2014).[8] The State contended that as a result of a firmware "bug," the device would not function properly if the data were retained. Pechko, supra, slip op. at 2.[9]

---

[8] We recognize that citation to unpublished opinions is generally prohibited. See R. 1:36-3. However, we cite Pechko and Lobo for evidential and not precedential purposes. See Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 155 n.3 (App. Div. 2008), certif. denied, 199 N.J. 129 (2009).

[9] We quoted the 2009 memorandum of Howard Baum, Ph.D., the forensic sciences director, regarding why the three data files were deleted after calibration certificates were printed:

> The reason the files are deleted is to prevent [the] instrument from not functioning when it is put in use after calibration due to a firmware bug. . . . The firmware bug does not affect the immediately printed Alcotest 7110 Calibration Certificates and does not affect the reliability of the Alcotest. However[,]

(continued)

11

B.   <u>Municipal Court Trial and Stay Order</u>

Upon the completion of pre-trial motions, defendant agreed to be tried on stipulated facts.  Pursuant to that agreement, the court considered the testimony and evidence presented in the suppression hearing.[10]  The State stipulated that it could not prove an observational case.  The parties also agreed that defendant's Alcotest result was .13 BAC; and the State had

_____

(continued)
> the electronic calibration files do contain additional data that is not printed on the Alcotest 7110 Calibration Certificates.
>
> I have examined the electronic files generated during calibration and feel the additional un[]printed data that they contain is not necessary to be preserved. Most of the un[]printed data lists the times of calibration, linearity, solution change, and retrieval date.  Even though the times are not captured on the printouts, the dates of these operations are listed[,] which is sufficient.  The only other pieces of data that are not captured are the software version (NJ3.11) and tolerance (5% and 0.005)[,] which do not change[,] and the record type[,] which is not needed.  The reliability of the Alcotest and the review of Alcotest results is not affected by the deletion of these files.
>
> [<u>Lobo</u>, <u>supra</u>, slip op. at 12-13.]

[10] <u>See</u> <u>State v. Gibson</u>, 219 <u>N.J.</u> 227, 245 (2014) (discussing the practice of conducting a trial on evidence presented in a pre-trial suppression hearing).

12

provided the foundational documents necessary for the admission of Alcotest results. See Chun, supra, 194 N.J. at 142-45, 154.

The municipal court stated: "Based upon the observational evidence[,] . . . the administration of the psychophysical tests[, and] . . . the blood alcohol content reading as shown . . . I will find the defendant guilty of driving while intoxicated with a blood alcohol content of .13 percent." The DWI conviction was defendant's first. The municipal court sentenced defendant to $714 in aggregate fines and penalties, ordered he serve twelve hours in the Intoxicated Driver Resource Center, and revoked his driving privileges for seven months — the minimum sanctions allowed under the circumstances. See N.J.S.A. 39:4-50(a)(1)(ii).

Defense counsel requested a stay of the sentence pending appeal, stating in support only that defendant intended to file an appeal. The State did not object. The court granted a stay of the license suspension, but not the fines, provided defendant file his appeal within twenty days. The municipal court did not provide any reasons.

C.   Trial De Novo and Stay

Upon trial de novo before the Law Division, defendant renewed his argument that the State's failure to provide discovery compelled exclusion of the Alcotest results. The

13

trial court was unpersuaded. The court understood defendant to argue that the data files were necessary "to determine the reliability" of the foundational documents required under <u>Chun</u>. The trial court held that defendant essentially sought to expand the scope of discovery mandated by <u>Chun</u>. The court noted that if a "defendant perceives an irregularity in any of the discoverable foundation[al] documents required by <u>Chun</u> . . . timely issuance of a subpoena will suffice for purposes of protecting the defendant's rights."

The court found defendant guilty anew based on the per se violation, and also found sufficient evidence to support a conviction based on the observational case.

> I looked at the DVR of the balance test and I would state, as a finder of fact, that I would have found beyond a reasonable doubt intoxication . . . just based on what I viewed . . . on that tape.
>
> I don't understand why the Prosecutor conceded that down below. And since I'm allowed to review this on my own, I don't know that I'm bound by that stipulation below, but I would have found him guilty of DWI just based on the MVR, regardless of the other argument. So, I want that to be into the record, if this is reviewed.[11]

---

[11] The Law Division on a trial de novo is free to base a conviction on an observational case, even if the municipal court has based the conviction solely on a per se violation. <u>State v. Kashi</u>, 360 <u>N.J. Super.</u> 538, 545-46 (App. Div. 2003), <u>aff'd</u>, 180 <u>N.J.</u> 45 (2004).

The court re-imposed the sentence of the municipal court, consistent with his conviction of a per se violation.[12]

Defense counsel again sought a stay of the license suspension. This time, the State objected.

> [DEFENSE ATTORNEY]: Judge, I would request that we continue the stay concerning the driving privilege revocation. There is a legal question. All of the cases on which the — which the unreported cases, with the exception of Carlson, are pending certification in the Supreme Court. I expect they're going head out to a collision course with Chun. And since it is an unresolved issue, despite Your Honor's legal finding, I'd ask that the stay on the license be continued.

> [PROSECUTOR]: The State would oppose a — a stay at this point. Your Honor, the State does recognize that all the Appellate Division decisions are unreported, but we have — the essentially four panels of the Appellate Division and this Court have rejected these very same arguments. The State would submit that the arguments don't raise a valid Appellate issue and would ask that the Court not continue the stay at this point.

Defense counsel represented to the trial judge that the sentences were stayed in other cases pending certification. The trial court then ordered a stay pending appeal, provided the

---

[12] The license suspension for a first-time offender's conviction based only upon an observational case would be three months, as opposed to seven to twelve months for the per se violation. N.J.S.A. 39:4-50.

15

notice of appeal was filed within ten days. The court did not provide reasons.

Defendant presents the following points on appeal:

> I. The State Failed to Provide Discovery of Complete Alcotest Data and Repair Records as Required by Our Supreme Court, Thereby Denying Defendant's Right to Explore Whether Recognized Alcotest Shortcomings Affected the Operability of the Instrument Used to Test His Breath and the Result Obtained Therefrom.
>
> II. The State's Failure to Provide Discovery of Complete Alcotest Data and Repair Records Warrants Either Dismissal, Exclusion, or Remand.
>
> III. Defendant Requests a Jury Trial Because He Faces Serious Quasi-Criminal and Civil Consequences as a Direct Result of the Municipal Court Proceedings.

## II.

### A.

We review the action of the Law Division, not the municipal court. State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012). We assess whether there was sufficient credible evidence in the record to support the Law Division's findings. State v. Johnson, 42 N.J. 146, 162 (1964). We do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). However, we exercise plenary review of legal conclusions that flow from established facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

16

378 (1995). We also deem the issue of whether evidence is material or subject to disclosure by the State to be a "mixed question of law and fact." State v. Marshall, 148 N.J. 89, 185 (discussing disclosure obligations under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)), cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997). Consequently, we review de novo whether the Law Division applied the correct standard, but defer to the court's fact finding unless clearly erroneous. Ibid.

### B.

The Supreme Court in Chun held that the Alcotest, using New Jersey Firmware version 3.11, was generally scientifically reliable, subject to certain ordered modifications. 194 N.J. at 65, 150. Additionally, its results were admissible to prove a per se violation of N.J.S.A. 39:4-50. Ibid. To demonstrate the device's proper working order, the Court required the State to introduce into evidence so-called core foundational documents:

> (1) the most recent Calibration Report prior to a defendant's test, including control tests, linearity tests, and the credentials of the coordinator who performed the calibration;
>
> (2) the most recent New Standard Solution Report prior to a defendant's test; and
>
> (3) the Certificate of Analysis of the 0.10 Simulator Solution used in a defendant's control tests.

17

[Chun, supra, 194 N.J. at 154.]

In order to enable the defendant to determine whether the device was in working order, or whether there was a flaw in the process, the Court ordered the State to disclose certain other foundational documents. However, the State was not required to introduce these non-core foundational documents into evidence in order to establish admissibility. These non-core foundational documents include:

> (1) New Standard Solution Report of the most recent control test solution change, and the credentials of the operator who performed that change;
>
> (2) Certificate of Analysis for the 0.10 percent solution used in that New Solution Report;
>
> (3) Draeger Safety Certificate of Accuracy for the Alcotest CU34 Simulator;
>
> (4) Draeger Safety Certificate of Accuracy for the Alcotest 7110 Temperature Probe;
>
> (5) Draeger Safety Certificate of Accuracy for the Alcotest 7110 Instrument;
>
> (6) Calibration Records, including control tests, linearity tests, and the credentials of the coordinator who performed the calibration;
>
> (7) Certificate of Analysis for the 0.10 percent solution used in the calibration control test;
>
> (8) Certificate of Analysis for the 0.04, 0.08, and 0.16 percent solutions used in the calibration linearity test;

18

(9) New Standard Solution Report, following the most recent calibration;

(10) Draeger Safety Certificates of Accuracy for the Simulators used in calibration;

(11) Draeger Safety Certificate of Accuracy for the Alcotest 7110 Temperature Probe used in calibration; and

(12) Draeger Safety Ertco-Hart Calibration Report . . . .[13]

[Id. at 153.]

Although the Court required disclosure of the twelve categories of non-core foundational documents, it held "they are not fundamentally a part of demonstrating that the particular device was in good working order." Id. at 144-45. In some respects, these non-core foundational documents "are tests of tests and, therefore, are too attenuated to require that they be admitted as part of the evidence." Id. at 144. The Court held that a defendant may conduct further discovery if these documents raise questions about the device's working order. "[I]n the event that any defendant perceives of an irregularity in any of these documents that might affect the proper operation of the device in question, timely issuance of a subpoena will

---

[13] We subsequently held that a temperature probe manufactured by Control Company was acceptable. State v. Holland, 423 N.J. Super. 309, 319 (App. Div. 2011).

19

suffice for purposes of protecting that defendant's rights." Id. at 144 n. 47.

We held in State v. Maricic, 417 N.J. Super. 280, 288 (App. Div. 2010), that the list of twelve documents that the State must routinely disclose under Chun should not be viewed to limit or preclude other discovery. Instead, requests for additional discovery must be viewed in light of general principles governing discovery in municipal court, and the Chun Court's observations regarding the relevance of certain documents.

Discovery in the municipal court is governed by Rule 7:7-7. That rule entitles a defendant to secure upon request "all relevant material." The rule sets forth a list of items substantially similar to those identified in Rule 3:13-3(b), governing criminal cases in the Law Division. However, "[o]ur courts have applied a narrower concept of 'relevant' discovery in DWI cases, which are quasi-criminal in nature, than in full-fledged criminal cases." State v. Carrero, 428 N.J. Super. 495, 507 (App. Div. 2012). A DWI defendant's "right to discovery . . . is limited to items as to which 'there is a reasonable basis to believe will assist a defendant's defense.'" Ibid. (quoting State v. Ford, 240 N.J. Super. 44, 48 (App. Div. 1990)).

A defendant is not entitled to information that "merely could <u>lead</u> <u>to</u> other information that is relevant." <u>Ibid.</u> (citing <u>Maricic</u>, <u>supra</u>, 417 <u>N.J. Super.</u> at 284, and <u>Ford</u>, <u>supra</u>, 240 <u>N.J. Super.</u> at 48). Discovery "must be relevant in and of itself." <u>Carrero</u>, <u>supra</u>, 428 <u>N.J. Super.</u> at 508. "However, at least with respect to certain classes of information," including repair records, "a DWI defendant need not have actual knowledge of the facts supporting the contentions that underlie his discovery requests." <u>Ibid.</u>

Although there is no general constitutional right to discovery even in criminal cases, <u>Weatherford v. Bursey</u>, 429 <u>U.S.</u> 545, 559, 97 <u>S. Ct.</u> 837, 51 <u>L. Ed.</u> 2d 30 (1977) (there is no general constitutional right to discovery in a criminal case); <u>State v. Marshall</u>, <u>supra</u>, 148 <u>N.J.</u> at 269, the State is obliged under due process principles to disclose exculpatory evidence. <u>See</u> <u>Brady</u>, <u>supra</u>, 373 <u>U.S.</u> at 87. Suppression of such evidence violates due process. <u>State v. Martini</u>, 160 <u>N.J.</u> 248, 268 (1999). <u>Brady</u> has been applied to the trial of quasi-criminal motor vehicle offenses. <u>Carrero</u>, <u>supra</u>, 428 <u>N.J. Super.</u> at 507-08.

"In order to establish a <u>Brady</u> violation, the defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is

21

material." Martini, supra, 160 N.J. at 268. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Knight, 145 N.J. 233, 246 (1996) (internal quotation marks and citation omitted).

Exculpatory evidence is treated differently from merely potentially useful evidence. Suppression of requested exculpatory evidence violates due process, regardless of the prosecution's good faith. Id. at 245; George v. City of Newark, 384 N.J. Super. 232, 243 (App. Div. 2006). However, "[w]ithout bad faith on the part of the State, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Ibid. (quoting Arizona v. Youngblood, 488 U.S. 51, 57, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281, 289 (1988)); see also State v. Mustaro, 411 N.J. Super. 91, 102-103 (App. Div. 2009). Where evidence has been destroyed, the court must focus on "(1) whether there was bad faith or connivance on the part of the government, (2) whether the evidence . . . was sufficiently material to the defense, [and] (3) whether [the] defendant was prejudiced by the loss or destruction of the evidence." State v. Hollander, 201 N.J. Super. 453, 479 (App. Div.), certif. denied, 101 N.J. 335 (1985).

22

Consistent with these principles, we have held that some repair records of a breath test device are discoverable. We stated in Ford, supra, 240 N.J. Super. at 51, that "information concerning . . . [a] particular [Breathylzer's] state of repair" was relevant and discoverable. But, the "routine production of [a device's] entire repair record . . . without appropriate time limitations would be unreasonable." Id. at 51-52. We also held in Maricic that the trial court erred in denying, in its entirety, a defendant's request for repair records of an Alcotest device, noting that the Chun Court observed that repair records were "'potentially relevant.'" 417 N.J. Super. at 285 (quoting Chun, supra, 194 N.J. at 145 n.48). Cf. State v. Green, 417 N.J. Super. 190, 202-03 (App. Div. 2010) (stating that repair record of speed radar device was discoverable).

The trial court in Maricic also erred in denying a request for downloaded data. 417 N.J. Super. at 286. We noted that the Chun Court ordered the State to create a database of downloaded Alcotest results. Ibid. (citing Chun, supra, 194 N.J. at 153). We concluded that implicit in the court's order was that the downloaded data available through the database was relevant. Id. at 287.

In this case, defendant seeks repair records and downloaded data that are not in the State's possession. The data defendant

23

seeks was erased. The requested repair records are the results of Dräger's tests, performed when it serviced the Alcotest. Dräger either possesses them, or destroyed them.

The State is not obliged to produce testing-related documents unless they "are within the possession, custody or control of the prosecutor." R. 3:13-3(b)(1)(C); R. 7:7-7(b)(4). For example, evidence in the control of a crime victim — notwithstanding the victim's close cooperation with the prosecution — is not within the prosecutor's "possession, custody or control." State ex rel. A.B., ___ N.J. ___ (2014) (slip op. at 24) (citing R. 3:13-3(b)(1)(E)). There is no evidence in the record to indicate that the State controls the repair-related data generated by Dräger. Consequently, it was defendant's obligation to subpoena those records from Dräger.[14] See Chun, supra, 194 N.J. at 144 n.47 (stating that "timely issuance of a subpoena will suffice for purposes of protecting . . . [a] defendant's rights" where irregularity in a produced document is perceived); see also State v. Holland, 422 N.J. Super. 185, 199 n.7 (App. Div. 2011).

By the same token, we find no Brady violation in connection with defendant's request for Dräger's repair-related test

_____

[14] We do not address what relief defendant could obtain if Dräger still possessed the test data, but failed to comply.

24

results. A prosecutor's obligation under Brady extends to documents of which it is actually or constructively aware, including documents held by other law enforcement personnel who are part of the prosecution team. Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490, 508 (1995); State v. Nelson, 155 N.J. 487, 499-500 (1998), cert. denied, 525 U.S. 1114, 119 S. Ct. 890, 142 L. Ed. 2d 788 (1999). However, the Brady disclosure obligation does not extend to documents held by a private contractor; nor is the State required to ask a private contractor to produce data for a defendant's potential use. See, e.g., United States v. Gray, 648 F.3d 562, 566-67 (7th Cir. 2011) (holding, in Medicaid fraud case, that Brady did not extend to State's outside Medicaid billing contractor), cert. denied, ___ U.S. ___, 132 S. Ct. 1056, 181 L. Ed. 2d 775 (2012).

In any event, we are unconvinced that the diagnostic tests are material. The record evidence indicates that the device was sent to Dräger in 2008 and 2011 for replacement of the fuel cell. In connection with the 2008 repair, defendant's expert explained that the fuel cells often needed replacement when a device had been "shelved" after delivery to its intended user. After the device was returned with the replaced fuel cell, the State performed various tests designed to ascertain it was in

25

working order. Although the expert minimized the significance of these tests, he provides no persuasive basis to conclude that Dräger's test results could have demonstrated a failure of the device to operate properly, notwithstanding the subsequent testing by the State that indicated that it was operating properly.

Turning to the downloaded data, we recognize that some of this information was only in the State's possession in electronic format. But it was deleted in good faith. Therefore, we find no discovery or Brady violation.

Rule 7:7-7 applies to documents in the State's possession. The destruction of discoverable evidence post-indictment generally violates Rule 3:13-3. State v. Dabas, 215 N.J. 114, 138 (2013). Similarly, the State is generally not free to destroy discoverable evidence post-complaint under Rule 7:7-7. The ninth data download of the device used by defendant occurred in September 2012, after defendant's breath test.

Nonetheless, we are unpersuaded by defendant's expert opinion that the deleted information is relevant under Rule 7:7-7. Although the expert opines that complete data is essential, defendant fails to demonstrate how the few items of data, not available in the paper disclosures, would demonstrate the device was not reliable, when all other evidence pointed to the

26

contrary conclusion. We note that Dr. Brettell's own comparison of data stored in devices, and paper records, discovered no discrepancies.

Our decision in Maricic, supra, does not compel a different result. First, Maricic did not analyze the specific elements of data at issue in this case. Second, Maricic relied on its understanding that the requested downloaded data were to be included in the statewide database ordered in Chun. See Maricic, supra, 417 N.J. Super. at 286-87 (citing Chun, supra, 194 N.J. at 90, 153).

However, the Court has since held that the existing State database — despite the data erasures — satisfies the Court's order. State v. Chun, 215 N.J. 489, 491-92 (2013) (Chun II). In Chun II, movants sought an order in aid of litigant's rights declaring the database inadequate. Id. at 489. Movants claimed, among other things, that the database did not include the calibration, control and linearity files that, as we discuss above, have been routinely erased since 2006.

In response, the State presented the Court with an affidavit of Dr. Baum, the current director of the State Police's Office of Forensic Sciences, whose 2009 memorandum we quoted above. Dr. Baum stated that in 2009, he reviewed Dr. Brettell's 2006 decision to erase the three electronic

27

calibration data files identified as 21NJ3-11, 22NJ3-11 and 58NJ3-11. Affidavit of Howard J. Baum, Ph.D., May 23, 2013. Dr. Baum confirmed that the routinely erased data contained certain records not present in the printed records. But, he concluded, as did Dr. Brettell before him, that the erased records were irrelevant:

> [N]one of these data records affect the accuracy of the results, they are not the results of the calibration, and they have nothing to do with the actual results of the operation and calibration of the instrument. . . . [N]one of the data that [are] cleared but not printed shows that there is a problem with the instrument. . . . [A]ll pertinent data demonstrating the proper working order of the instrument [are], in fact, printed on the hard copy documents. Therefore, . . . clearing the files does not [a]ffect the scientific reliability of the Alcotest, and . . . the data that [are] cleared and not printed [are] irrelevant and unnecessary to determine whether the instrument is operating properly.[15]

The Court implicitly agreed, and denied movants' request to find the database deficient. Chun II, supra, 215 N.J. at 492. In its order, the Court acknowledged defendants' claim that the database was noncompliant with Chun I because it was, among other things, "incomplete as to certain types of files and calibration cycles." Chun II, supra, 215 N.J. at 489. Noting

---

[15] Pursuant to N.J.R.E. 201(b)(4), we take judicial notice that Dr. Baum presented this opinion to the Court.

the State's response in part through Dr. Baum's affidavit, the Court then "concluded that the centralized statewide database is fully in compliance with this Court's Order of March 17, 2008, in all respects." Id. at 491. Although the Court's order in Chun II was unaccompanied by a written opinion, it is binding precedent, as it represents the Court's considered disposition of issues presented after plenary review. See In re Osborne, 76 F.3d 306, 309 (9th Cir. 1996) (stating "the doctrine of stare decisis concerns the holdings of previous cases, not the rationales" and "judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision") (internal quotation marks and citation omitted).

Applying the principles set forth above, we also find no violation of Brady. The deleted data were routinely erased because of a firmware bug. There is no allegation, let alone record evidence, that the erasures were accomplished in bad faith. See Illinois v. Fisher, 540 U.S. 544, 547-48, 124 S. Ct. 1200, 1202, 157 L. Ed. 2d 1060, 1066 (2004) (stating that defendant bears burden to prove bad faith). Consequently, defendant must demonstrate more than that the information was "potentially useful." See George, supra, 384 N.J. at 243

29

(internal quotation marks and citation omitted). Defendant must demonstrate that the deleted data was exculpatory.

However, for the same reasons that the missing data is not "relevant" under Rule 7:7-7, it falls short of being exculpatory or material. Defendant has not demonstrated that there was a "reasonable probability" that had the missing data been produced, "the result of the proceeding would have been different." Knight, supra, 145 N.J. at 246 (internal quotation marks and citation omitted). Although he obviously could not analyze data he did not receive in any form, defendant failed to demonstrate how the type of information sought could, in a hypothetical case, demonstrate that a device was unreliable, despite all the disclosed evidence to the contrary.

## III.

Defendant argues that he was entitled to a jury trial, notwithstanding our Court's determination in State v. Hamm, 121 N.J. 109, 129-30 (1990), cert. denied, 499 U.S. 947, 111 S. Ct. 1413, 113 L. Ed. 2d 466 (1991), that there is no jury trial right for DWI prosecutions. Defendant argues that changes in the DWI statutes since Hamm was decided compel a different result. We are unconvinced.

Defendant argues that he is subject to incarceration for as much as seventy-seven days — thirty days for his first DWI

30

offense, <u>N.J.S.A.</u> 39:4-50 (a)(1)(ii); sixty days on the reckless driving charge, <u>N.J.S.A.</u> 39:4-96; and fifteen days on the failure to maintain a lane charge, <u>N.J.S.A.</u> 39:4-88(b); plus up to forty-eight hours in the IDRC. He also asserts when insurance surcharges are added, the potential monetary consequence of conviction could exceed $6000.

Even assuming for argument's sake the theoretical possibility of such a consecutive sentence, that does not compel a jury right; rather, the denial of a jury trial compels a limitation of the sentence. Where a DWI defendant is exposed to an aggregate sentence of more than six months as a result of related charges, "and the defendant is not offered a jury trial, the sentences may not total more than six months." <u>State v. Federico</u>, 414 <u>N.J. Super.</u> 321, 330 (App. Div. 2010) (internal quotation marks and citation omitted); <u>see also</u> <u>Blanton v. N. Las Vegas</u>, 489 <u>U.S.</u> 538, 543, 109 <u>S. Ct.</u> 1289, 1293-94, 103 <u>L. Ed.</u> 2d 550, 556-57 (1989) (stating that DWI offender exposed to sentence of six months or less is not entitled to a jury trial). Also, the potential monetary consequences are not so onerous as to compel a right to a jury. <u>See</u> <u>Id.</u> at 544-45 (noting that the possible $1000 fine was well below the $5000 level set by Congress for a "petty offense," and did not compel jury trial).

A-0296-13T1

IV.

Although we affirm defendant's conviction, we express our concern that both the municipal court and the Law Division stayed defendant's license suspension pending appeal in this matter without providing any statement of reasons. We do not question the authority of either the municipal court, or the Law Division, to stay the imposition of all or part of a sentence. See R. 7:13-2 ("Notwithstanding R. 3:23-5, a sentence or a portion of a sentence may be stayed by the court in which the conviction was had or to which the appeal is taken on such terms as the court deems appropriate."); R. 3:23-5 (stating that pending appeal after the trial de novo, the court may stay a fine, costs, a forfeiture, or probation, and a defendant shall be admitted to bail in accordance with standards set forth in Rule 3:26-1(a)).

Nonetheless, an application for a stay pending appeal is governed by the three-part standard in Crowe v. De Gioia, 90 N.J. 126 (1982). Garden State Equality v. Dow, 216 N.J. 314, 320 (2013).

> A party seeking a stay must demonstrate that (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the "relative hardships to the parties reveals that greater harm would

32

> occur if a stay is not granted than if it were."
>
> [*Ibid.* (quoting <u>McNeil v. Legis. Apportionment Comm'n</u>, 176 <u>N.J.</u> 484, 486 (2003) (LaVecchia, J., dissenting)).]

In cases of public importance, the public interest must also be weighed. <u>Id.</u> at 321.

A court should not stay the suspension of driving privileges of a person convicted of DWI or refusal without considering the factors governing the issuance of a stay. With respect to the second <u>Crowe</u> factor, the Court should consider whether the appeal involves a substantial question, and whether there is a reasonable prospect that defendant may prevail and avoid license suspension. In this case, for example, defendant sought a stay based on an argument that had been rejected multiple times by our court, albeit in unpublished decisions. Moreover, both the municipal court and Law Division judges were satisfied that defendant had violated <u>N.J.S.A.</u> 39:4-50 based on the observational case. The State's stipulation that the observational case was insufficient did not bind the court. <u>State v. Wesner</u>, 372 <u>N.J. Super.</u> 489, 495 (App. Div. 2004), <u>certif. denied</u>, 183 <u>N.J.</u> 214 (2005). Consequently, a conviction with at least a three-month suspension was mandated, <u>see</u> <u>N.J.S.A.</u> 39:4-50(a)(1)(i), regardless of the outcome of the appeal.

33

Our drunk driving laws are designed to combat the "senseless havoc and destruction caused by intoxicated drivers." State v. O'Driscoll, 215 N.J. 461, 472 (2013) (internal quotation marks and citation omitted). Our Supreme Court has adopted directives to ensure the swift prosecution of those charged, and the swift punishment of those convicted, to further the public goals of traffic safety. See State v. Cahill, 213 N.J. 253, 269-70 (2013) (discussing time-goals for prosecution of DWI cases).

Although defendant is a first-offender, the court should be mindful of the possibility that a defendant may re-offend during a stay, and of the consequent risk to the public. See State v. Henry, 418 N.J. Super. 481, 494-95 (Law Div. 2010) (noting a National Highway Traffic Safety Administration study's finding that "'each prior DWI conviction increases an offender's recidivism rate by 10 percent per year'"). The record does not include defendant's driver's abstract, to reflect whether he had a history of violating the motor vehicle laws; nor does the record indicate whether he had a record of substance or alcohol abuse that may have heightened the risk of him re-offending during the stay. There is no certification from defendant setting forth the alleged harms he would suffer without a stay.

A-0296-13T1

There is no indication that the trial court sought or considered such evidence before granting the stay.

We appreciate that the loss of a driver's license is a substantial sanction. Although a DWI defendant sentenced to a term of incarceration by the Law Division is eligible for bail, Rule 3:23-5, the stay of the license suspension should not be automatic. Moreover, as reflected in Rule 7:13-2, a court that determines to impose a stay may do so upon appropriate conditions.

For example, if a convicted defendant demonstrates that the loss of driving privileges pending appeal would unavoidably and significantly interfere with his or her ability to maintain employment, and a stay is otherwise warranted under the Crowe factors, then the court may consider conditioning the stay by limiting the defendant's driving to that required by employment. The court may also condition a stay upon the verified installation of an ignition interlock device, which would provide some assurance that the defendant would not reoffend pending appeal. We leave it to the discretion of the trial courts imposing stays to develop other appropriate terms or conditions, reasonable under the circumstances, supported by competent evidence, and based on expressed findings of fact and conclusions of law.

35

Affirmed.  The stay of the license suspension is vacated.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

36